# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARIO WILLIAMS, | ) |
| Plaintiff, | ) ) ) |
| vs. | )  Case No. CIV-11-195-JHP ) |
| ROBERT EZELL, Warden, et al., | ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter comes before the Court on Defendants' (Ezell, Martin, Cotton, Miller, Barneck, Morgal, Williamson, Stevens, Yandale, Barlow, Robinson, Morgan, Rogers, and Hosum) Motion to Dismiss, or in the alternative for Summary Judgment (Dkt. # 112); Defendant Morton's Motion to Dismiss/Motion for Summary Judgment (Dkt. # 89); Plaintiff's Motion for Preliminary Injunction (Dkt. # 102); and Plaintiff's Motion to Compel Discovery (Dkt. # 149). For the reasons set forth herein, the Court hereby grants Defendants' motions to dismiss or alternatively, motions for summary judgment, and denies plaintiff's motion for a preliminary injunction and plaintiff's motion to compel discovery.

### *Procedural Background*

Plaintiff, an inmate in the Oklahoma Department of Corrections (hereinafter "DOC") currently housed at the Davis Correctional Facility, in Holdenville, Oklahoma, brought this action pursuant to 42 U.S.C. § 1983, seeking compensatory and punitive damages of

$200,000.00 from each defendant in their individual and official capacity (Dkt. # 1) Plaintiff, appearing *pro se*, was granted leave to proceed *in forma pauperis*. On July 12, 2012, the plaintiff was granted leave to file his amended complaint. In his amended complaint, the plaintiff alleges he was attacked on September 29, 2009 by six (6) correctional officers in retaliation for asserting his First Amendment right to file inmate grievances. Plaintiff claims excessive force was used in extracting him from his cell, including the use of pepper spray and the twisting of his limbs and then he was placed naked in a disciplinary unit without being allowed to decontaminate and that he was not seen by medical staff for six (6) days. Further, plaintiff alleges he went on a food strike from September 29, 2009 until October 6, 2009 and even though he told the correctional officers, the medical staff still refused to see him. According to plaintiff, only after he sent a letter to DOC complaining about his treatment was he seen by medical staff. On October 8, 2009, plaintiff asserts he was seen by medical staff but they were indifferent to his pain and suffering; but he was finally allowed to shower, given clothes, mattress, hygiene items and writing material from other inmates eight hours later.

On October 16, 2009, plaintiff complains that he was given six false misconducts in retaliation and to cover the use of excessive force when he was removed from his cell. On October 19, 2009, plaintiff states that he was found guilty of five of those misconducts. Plaintiff asserts the misconducts were not given for anything that he had done prior to the cell extraction; rather, they were given, according to the plaintiff, simply in retaliation for filing informal grievances.

Additionally, plaintiff asserts that the defendants violated his Eighth and Fourteenth Amendment rights simply because he tried to informally resolve his complaints with Chief Cotton. Furthermore, plaintiff claims he has been denied medical services since the cell extraction on September 29, 2009. Finally, plaintiff alleges Defendant Morton violated his Fourteenth Amendment rights, on or about July 15, 2011, because she did not properly review his misconduct appeals.

Further, in an affidavit, plaintiff makes numerous allegations of actions taken against him by Davis staff in retaliation for his exercise of his First Amendment rights. These include housing orders where he was reportedly assigned to room with a homosexual and/or assignment to a cell with someone who refused to let him have the bottom bunk; denied property and showers while in segregation in February, 2011 for refusing to room with inmates who were assigned to room with him; denied outside exercise while in segregation; issued misconduct reports which were falsified; he was required to use a shower that had blood on it; and denial of outside recreation and showers on numerous occasions.

On September 20, 2011, the magistrate judge stayed these proceedings and ordered the preparation of a special report, pursuant to *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). On November 16, 2011, the special report was filed. Thereafter, on April 17, 2012, because the special report on file indicated that the court had to consider a special report filed in an earlier case to decide some of the allegations in this lawsuit, the magistrate judge ordered the preparation of an amended special report to contain all relevant documents

concerning all of the allegations in plaintiff's complaint. On May 31, 2012, the Amended Special Report was filed herein and a supplement thereto was filed on June 11, 2012.

On June 11, 2012, Defendant Morton filed a Motion to Dismiss/Motion for Summary Judgment and Brief in Support (Dkt. # 89). The plaintiff filed a response to said motion on June 20, 2012 (Dkt. # 96). Thereafter, on June 22, 2012, Defendants Ezell, Martin, Cotton, Berneck, Hosum, Rogers, Morgan, Robinson, Morgal, Yandale, Barlow, Miller, Williamson, and D. Stevens filed a Motion to Dismiss or in the alternative for Summary Judgment and Brief in Support (Dkt. # 112). On July 12, 2012, the plaintiff filed an Amended Complaint and on July 20, 2012, the plaintiff filed his response to the Defendants Motion to Dismiss or in the alternative for Summary Judgment (Dkt. # 134). Thereafter, on September 19, 2012, Defendants Jim Kieth and Nurse Laird, where were not served until August 27, 2012 and September 4, 2012, respectively, were allowed to join in the previously filed motion to dismiss, or alternatively, motions for summary judgment - Dkt. # 112.[1] While the Amended Complaint was filed after the Amended Special Report, it appears that the Amended Special Report adequately addresses all of the allegations contained with the Amended Complaint.

### *Undisputed Facts*[2]

Plaintiff is currently housed at Davis Correctional Facility, Holdenville, Oklahoma pursuant to a contract between Corrections Corporation of America, Inc., ("CCA") and the

---

[1] *See*, minute order entered on September 19, 2012 (Dkt. # 148).

[2] The following facts are either undisputed–*i.e.*, not specifically controverted by Williams in accordance with Local Civil Rule 56.1(c)–or are described in the light most favorable to Williams. Immaterial facts are omitted.

Oklahoma Department of Corrections ("DOC").  CCA owns and operates the Davis Correctional Facility.  Plaintiff is serving a life sentence without the possibility of parole. Dkt. # 81-9, and is therefore, not eligible to earn good time credits toward a reduction in his sentence.[3]  Defendants Ezell, Martin, Cotton, Miller, Barneck, Morgal, Williamson, Stevens, Yandale, Barlow, Robinson, Morgan, Rogers, and Hosum were at all times relevant to the Plaintiff's allegations employees of CCA, working at the Davis Correctional Facility. Defendant Keith was employed by CCA as the facility warden of Davis Correctional Facility during some of the relevant time periods contained within plaintiff's amended complaint. Defendant Laird was employed by CCA in the medical unit of the Davis Correctional Facility during some of the relevant time periods contained within plaintiff's amended complaint.  Defendant Morton is employed as the Manager of the Administrative Review Authority of the DOC.

DOC has a written policy governing inmate grievances, entitled "Offender Grievance Process" - OP-090124.  *See*, Dkt. 82-3.  This policy outlines the steps that an inmate must follow in order to exhaust his administrative remedies.  Additionally, CCA has a procedure in place to deal with inmate grievances, entitled "Inmate/Resident Grievance Procedures" - Policy No. 14-5.  *See*, Dkt. 82-4.

Both DOC and CCA grievance policies require an inmate to first attempt to informally resolve any complaints by talking with appropriate staff.  Under the DOC policy, an offender must first try to resolve his complaint informally by talking with appropriate staff within

---

[3]*See*, OKLA. STAT. tit. 57, § 137 (2012).

three days of the incident. Dkt. # 82-3 at p. 6.[4] If not resolved, the inmate must submit a "Request to Staff" stating "completely but briefly the problem." *Id.* This written request must be submitted within seven calendar days of the incident. *Id.*, at p. 7. If the complaint is not resolved informally, the offender may obtain and complete the "Offender Grievance Report Form" and submit it along with the "Request to Staff" form used in the informal resolution process with the response, to the reviewing authority. *Id.* DOC policy requires this grievance form to be submitted "within 15 calendar days of the incident, or the date of the response to the "Request to Staff" form, whichever is later." *Id.* An appeal under this procedure is taken to the Oklahoma Department of Corrections.

Under CCA's policies, inmates are required to initiate the informal grievance process by filing an 14-5A Informal Resolution form. This form must be submitted within seven (7) calendar days of the alleged incident through the facility mail, or in person, to the appropriate unit staff. Dkt. # 82-4 at p. 7. In the event the inmate is not satisfied with the response, he has five (5) calendar days to submit a formal grievance to the Grievance Officer. The inmate must attach a copy of the 14-5A to any formal grievance. *Id.*, at p. 8. If the inmate is not satisfied with the response of the Grievance Officer, he may appeal the decision to the Warden. *Id.*, at p. 11. *See also*, Dkt. 82-7, Affidavit of Grievance Coordinator at Davis Correctional Facility.

Additionally, both DOC and CCA have procedures in place for Emergency Grievances. These procedures allow inmates to bypass the informal resolution process when

---

[4] All page number references are to the CM/ECF page numbers contained at the top of the court documents.

a substantial risk of personal injury or other irreparable harm exists. Under DOC's policy, an inmate may submit a grievance directly to the reviewing authority anytime the complaint is of a sensitive nature or where substantial risk of personal injury or other irreparable harm exists. The inmate is required to use an "Offender Grievance Report Form" (DOC 090124A). Dkt. # 82-3, at p. 13. Upon receipt of a grievance marked "emergency" or "sensitive", the reviewing authority only has twenty-four (24) hours to ascertain if the grievance is in fact an emergency or sensitive grievance and if the grievance is deemed an emergency, the reviewing authority must provide an expedited response within 48 hours of receipt, excluding weekends and holidays. *Id.*, at p. 14. Additionally, an expedited response is required where an appeal is taken. *Id.* Where, however, the reviewing authority finds that the grievance is not of an emergency or sensitive nature, the grievance must be returned to the inmate with notification of the decision that the standard grievance procedure must be followed to resolve the issues. *Id.*

Under CCA's policies, an inmate has to use a 14-5B Inmate/Resident Grievance form to file an emergency grievance, place the grievance in a sealed envelope and place it in the grievance mailbox or give it to unit staff. Dkt. # 82-4, at p. 9. If it becomes necessary to file an emergency grievance on a weekend, the sealed envelope is to be given to the Shift Supervisor. *Id.* Again, emergency grievances are reviewed by the grievance office to ascertain if the grievance is of an emergency nature. If the grievance is determined to be an emergency, it is logged in the 14-5D Facility Grievance Log or put in the data base and immediately forwarded to tn individual authorized to serve as Administrative Duty Officer.

Any response must be documented on page 2 of the form and submitted to the inmate for signature at the time of presenting the response t the inmate. The inmate is then given a complete copy of the emergency grievance and any corresponding attachments at the time of presenting the response. *Id*.

Furthermore, both DOC and CCA policies provide a mechanism to deal with excessive grievances. Specific rules govern why, how and how long the grievance restrictions will last. *See*, Dkt. # 82-3, at pp. 14-16 and Dkt. # 82-4, at pp. 5-6.

During his incarceration at Davis Correctional Facility, the plaintiff has filed sixteen documented grievances. The special report establishes that no grievance was filed in accordance with either DOC or CCA regarding use of excessive force following the September 29, 2009 cell extraction. Further, Plaintiff previously filed a lawsuit in this Court on December 1, 2009, in which he made most of the same allegations made in this lawsuit.[5] The earlier lawsuit, Case No. CIV-09-00468-FHS-SPS, was dismissed, on August 24, 2010, for failure to exhaust his administrative remedies. On January 12, 2011, the Tenth Circuit Court of Appeals affirmed this court's dismissal for failure to exhaust. *Williams v. Corrections Corp. of America, Inc.*, 407 Fed.Appx. 301, 2011 WL 94699 (10th Cir. 2011).

Plaintiff did, however, file an appeal with DOC Administrative Review Authority regarding four misconduct convictions in 2009 which he received as a result of the events

---

[5] In the earlier lawsuit, the plaintiff claimed his First and Fourteenth Amendment rights were violated when Defendants denied him access to the facility's grievance procedures and he alleged he was being subjected to excessive force and denied medical care in violation of the Eighth Amendment. Finally, the plaintiff asserted the Defendants had violated his Fourteenth Amendment rights by retaliating against him for filing grievances.

which led to his cell extraction on September 29, 2009.  In his appeal of the misconducts, plaintiff stated that the offenses had been falsified to cover up the use of excessive force on him in September 29, 2009.  Plaintiff did not, however, ever file any type of grievance which specifically alleged that he had been subjected to excessive use of force or denied medical treatment following the same.

Out of the sixteen grievances filed by plaintiff, two of those grievances involved denial of responses to informal grievances by staff and those grievances were granted and a response was provided to plaintiff.  *See*, Grievance No. 2010-265 and 2010-266, at Dkt. # 82-5, at pp. 6-25.

A grievance, submitted in September, 2011, requesting an investigation into why inmates on Echo Unit were not being provided showers and sanitation/personal hygiene according to state and federal laws, was granted.  The investigation revealed that the water supply was shut off at the facility without advance notice of the water stoppage. Additionally, the warden noted that the plaintiff was requesting that showers be provided three (3) times per week, with no more than two (2) days apart.  The warden granted the plaintiff's request to have a shower three times (3) times per week; but denied his request that the showers be provided with no more than two (2) days apart.  *See*, Grievance No. 2011-1001-00137-G, Dkt. # 82-6, at pp. 1-6.

None of plaintiff's other grievances were granted.  Rather, eight of those grievances were filed as "emergency grievances," but were determined not to be emergencies. Plaintiff did not resubmit any of those grievances under the standard grievance procedure.  *See*,

9

Grievance Nos. 10-2077 (Dkt. # 82-8, pp. 2-5)[6], 2010-282 (Dkt. # 82-5, pp. 26-27), 11-1220 (Dkt. # 82-8, pp. 6-9), 11-1361 (Dkt. # 82-8, pp. 10-13), 2011-0109 (Dkt. # 82-5, pp. 42-44), 2011-1001-00123-G (Dkt. # 82-5, pp. 47-50), 2011-1001-069-G (Dkt. # 82-6, pp. 7-20), and 2011-1001-00155-G (Dkt. # 82-6, pp. 21-29). In two instances plaintiff appealed the decision finding the grievance was not an emergency and that decision was affirmed. *See*, Grievance Nos. 2011-1001-0069-G (Dkt. # 82-6, pp. 12-20) and 2011-1001-0155-G (Dkt. # 82-6, pp. 21-29). Following those decisions, plaintiff did not resubmit his grievance.

In four other grievances, plaintiff did not submit evidence of any attempts at informal resolution with his grievance, so the grievances were returned unanswered. Plaintiff never resubmitted these grievances. *See*, Grievance Nos. 2010-118 (Dkt. # 82-5, pp. 2-5); 2011-004 (Dkt. # 82-5, pp. 32-34); 2011-005 (Dkt. # 82-5, pp. 38-41); and 2011-031 (Dkt. # 82-5, pp. 42-44).

The final grievance filed by plaintiff was filed under DOC policies and related to medical services. Once the grievance was denied, plaintiff did not file any appeal with the Chief Medical Officer of DOC. *See*, Grievance No. 2010-304 (Dkt. # 82-5, pp. 28-30).

### *Legal Analysis*

#### *A. Standard for dismissal*

Title 42 U.S.C. § 1983 provides a federal remedy against any person who, acting under color of state law, deprives another of his federal rights. *Conn v. Gabbert*, 526 U.S.

---

[6]Instead of resubmitting this grievance, plaintiff filed a separate grievance with Davis Correctional Facility. *See*, Grievance No. 2010-282, Dkt. # 82-5. Pp. 26-27.

286, 290 (1999). Two prima facie elements must be alleged in a 1983 complaint: 1) the defendant deprived the plaintiff of a right secured by the 'Constitution and laws' of the United States and 2) the defendant acted 'under color of law.' *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). Federal Rule of Civil Procedure 8(a)(2) sets up a liberal system of notice pleading in federal courts requiring only that the complaint include a short and plain statement of the claim. *Robbins v. Oklahoma*, 519 F.3d 1242, 1246 (10th Cir. 2008).

A civil rights claim should be dismissed only where it appears that the plaintiff could prove no set of facts entitling him to relief. *Meade v. Grubbs*, 841 F.2d 1512, 1516 (10th Cir. 1988) (citing *Owens v. Rush*, 654 F.2d 1370, 1378-79 (10th Cir. 1981)). In reviewing a claim for dismissal under Fed.R.Civ.P. 12(b)(6), all of the factual allegations in the complaint must be presumed true and construed in the light most favorable to the plaintiff. *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). A *pro se* litigant's pleadings are held to less stringent standards than those drafted by lawyers and the court must construe them liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). At the same time, the district court can not assume the role of advocate for a *pro se* litigant and should dismiss claims that are supported by vague or conclusory allegations. *Hall*, 935 F.2d, at 1110. Where a court considers matters outside the pleadings, such as those contained within a special report, a Rule 12(b)(6) motion to dismiss "must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d).

### *B.  Standard for summary judgment*

Summary judgment is appropriate where there is no dispute of material facts and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P.56.  When presented with a summary judgment motion, this Court must determine whether there "are any genuine factual issues that properly can be resolved only by the finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby*, *Inc*., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).  When evaluating a motion for summary judgment, this Court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.  *Gray v. Phillips Petroleum Co*., 858 F.2d 610, 613 (10th Cir. 1988).  The party opposing summary judgment, however, "may not rest upon mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510 (quoting *First National Bank of Arizona v. Cities Service Co*., 391 U.S. 253, 288, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

To survive a motion for summary judgment on a claim of retaliation for exercise of his constitutional rights, a plaintiff "must prove that 'but for' the retaliatory motive, the incidents to which he refers . . . . would not have taken place."  *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (citation omitted).  "[A]n inmate is not inoculated from the normal conditions of confinement . . . merely because he has engaged in protected activity."  *Id*.  "An inmate claiming retaliation must 'allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights.'"  *Id*.

Furthermore, there are no state laws or prison regulations creating either a right or expectation for a prisoner to remain in a particular prison or classification to which he has been assigned, and no due process hearing is required in conjunction with transfer to a segregation unit.

> As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight. The Clause does not require hearings in connection with transfers whether or not they are the result of the inmate's misbehavior or may be labeled as disciplinary or punitive.

*Montanye v. Haymes*, 427 U.S. 236, 242 (1976), 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976). Such transfers are within the discretion of the corrections officials. *See also*, *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) and *Twyman v. Crisp*, 584 F.2d 352, 355-356 (10th Cir. 1978).

### *C. Failure to exhaust administrative remedies*

The Prison Litigation Reform Act of 1996 ("PLRA") provides in part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n. 1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under

the PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). In deciding a motion to dismiss based on nonexhaustion, the court can consider the administrative materials submitted by the parties. *See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212 (10th Cir. 2003), *abrogated in part on other grounds*, *Jones v. Bock*, 549 U.S. 199 (2007).

Based upon the undisputed factual background, it is clear Plaintiff did not properly exhaust his administrative remedies as to his claims of excessive force on September 29, 2009, nor his claims of denial of medical care in October, 2009. According to the records, Plaintiff first complained he was being subjected to "staff retaliation" on March 25, 2010. The grievance does not, however, indicate why staff was retaliating against the plaintiff and it does not appear to be even remotely related to the cell extraction incident of September 29, 2009. Other grievances claim the staff denied him certain things like recreation in retaliation for his filing a civil suit against staff. These allegations are, however, conclusory and there is no evidence to support them. Despite plaintiff's allegations that he has been harassed or retaliated against for exercising his Constitutional rights, the Plaintiff has not provided any evidence to support his allegations that the misconducts were issued solely in retaliation. Rather, the special report clearly establishes that DOC's Administrative Review Authority (Defendant Morton) reviewed Plaintiff's misconduct records and found there was sufficient evidence to support each misconduct charged.

Moreover, an affidavit from Chief Cotton indicates Plaintiff refused to comply with a lawful order to close his food port door. Plaintiff does not dispute this fact; rather, he

claims he was trying to informally resolve some issue by disobeying Cotton's direct orders. As the Supreme Court made clear in *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), however, "it is not the role of the federal judiciary to scrutinize and interfere with the daily operations of a state prison, and our retaliation jurisprudence does not change this role." *Peterson*, *supra*. Additionally, a review of the video surveillance of the cell extraction which occurred on September 29, 2009, clearly establishes that Plaintiff refused to comply with orders from the prison S.O.R.T. team assembled to remove him from his cell even though he was given many opportunities to comply before any force was used to gain his compliance. Also, despite allegations to the contrary, the video shows the plaintiff was allowed to decontaminate shortly after the incident and was not placed into an administrative segregation unit without any clothes. Based upon the video of the cell extraction, this court finds Plaintiff has not established that the misconducts were issued for retaliatory reasons. Additionally, this court finds plaintiff has failed to exhaust his claims of excessive force and denial of medical care or any other constitutional claims and has failed to state a claim upon which relief may be granted for retaliation. As a result, this court hereby grants Defendants' (Ezell, Martin, Cotton, Miller, Barneck, Morgal, Williamson, Stevens, Yandale, Barlow, Robinson, Morgan, Rogers, Hosum, Keith, and Laird) Motion for Summary Judgment (Dkt. # 112).

### *D.  Denial of due process claim*

Count Four of Plaintiff's Amended Complaint alleges that Defendant Morton denied him due process by failing to grant an appeal of four misconducts alleging assault on officers.

15

Plaintiff seeks both compensatory and punitive damages against Defendant Morton. Defendant Morton is immune from suit in her official capacity since a suit against her is in fact a suit against the state itself. *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). Nothing within the Amended Complaint suggests that Defendant Morton personally participated in depriving the plaintiff any of his constitutional rights.

While plaintiff alleges that Defendant Morton refused to overturn the warden's decision thereby depriving him of due process, the documents provided to the court establish otherwise. Plaintiff's misconducts do not appear, under Oklahoma law, to implicate a liberty interest protected by due process. Despite the sanction imposed language on the disciplinary hearing report,[7] the Oklahoma statutes clearly indicate that the plaintiff is not entitled to good time or "earned" credits. *See*, OKLA. STAT. tit. 57, § 137 (2012). Furthermore, in accordance with *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), in order to comply with due process in disciplinary proceedings, an prisons administrative procedures need only provide advance written notice of the claimed violation, a written statement of factual findings, and a right to call witnesses and present documentary evidence if not unduly hazardous to institutional safety or correctional goals. The documents contained within the amended special report and those attached to Defendant Morton's motion establish that the plaintiff was provided due process prior to his disciplinary proceedings. Plaintiff was not entitled to a due process hearing prior to his placement in the segregation unit. As a result,

---

[7]*See*, Dkt. #s 81-1 and 89-2.

16

the court hereby grants Defendant Morton's Motion for Summary Judgment (Dkt. # 89) for failure to state a claim for relief.

### E.  Motion to Compel Discovery

Finally, plaintiff's motion to compel discovery (Dkt. # 149) is denied.  The magistrate judge attempted to assist plaintiff in obtaining service on unserved defendants by requiring the attorney for DOC to provide the last known addresses of unserved defendants to the United States Marshal.  *See*, Dkt. # 129.  Following receipt of those addresses, the United States Marshal again attempted to serve those defendants (Wakefield, Hernandez, Swayzie, and Karr).  The summons were, however, returned unexecuted, because the marshal could not locate the individuals at the addresses provided.  *See*, Dkt. #s 139, 140, 141 and 143.  It is not the responsibility of the Davis Correctional Facility to assist the plaintiff in obtaining service on former employees.

### F.  Motion for Preliminary Injunction

Based upon the record herein, plaintiff has failed to establish that he is entitled to a preliminary injunction.  Therefore, his motion (Dkt. # 102) is denied.

### Conclusion

For the reasons set forth herein, the Court hereby grants the Defendants' Motions for Summary Judgment (Dkt. #s 112 and 89); denies Plaintiff's Motion to Compel Discovery (Dkt. # 149); and denies Plaintiff's Motion for Preliminary Injunction (Dkt. # 102).

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1. Defendants' Motions for Summary Judgment (Dkt. #s 112 and 89) are **granted** and Plaintiff's civil rights complaint (Dkt. # 131) is **dismissed with prejudice** as to all named defendants for failure to exhaust administrative remedies, failure to state a claim for relief for retaliation, and for failure to state a claim for relief on his due process claim against Defendant Morton.

2. Plaintiff's Motion to Compel Discovery (Dkt. # 149) is **denied**.

3. Plaintiff's Motion for Preliminary Injunction (Dkt. # 102) is **denied**.

4. A separate judgment shall be entered in favor of the defendants and against plaintiff.

5. Plaintiff remains obligated to pay in monthly installments the **$350.00** filing fee incurred in this matter.

It is so ordered on this  27th  day of March, 2013.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma